UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

BRADLEY C. REIFLER,

                                    Debtor.

------------------------------------------------------------X

BRADLEY C. REIFLER,

                              Appellant,

                  -v-

NORTH CAROLINA MUTUAL LIFE
INSURANCE COMPANY,

                              Appellee.

No. 18-CV-4711 (KMK)

OPINION & ORDER

Appearances:

Michael D. Siegel, Esq.
New York, NY
*Counsel for Appellant*

Norman N. Kinel, Esq.
New York, NY
*Counsel for Appellee*

KENNETH M. KARAS, District Judge:

Bradley C. Reifler ("Reifler") appeals from the May 4, 2018 Order of the United States

Bankruptcy Court (the "Order") entering default judgment against him.  (*See* Not. of Appeal

(Dkt. No. 1).)[1]  For the reasons set forth below, the Order is affirmed.

---

[1] Citations to "Dkt. No." are citations to the filings in this appeal.

## I.  Factual and Procedural Background

On January 20, 2017, Reifler filed a Chapter 7 bankruptcy petition.  (A.R. 43.)[2]  On May 1, 2017, North Carolina Mutual Life Insurance Company ("NCMLI") initiated the adversary proceeding underlying this appeal by filing a complaint against Reifler in the Bankruptcy Court, opposing the discharge of Reifler's liabilities on the ground of fraud.  (A.R. 88.)

On August 22, 2017, NCMLI served requests for production of documents on Reifler.  (*See* A.R. 111, at 1.)  In NCMLI's view, Reifler produced "very few relevant documents, including only four email communications."  (*Id.* (emphasis omitted).)  NCMLI considered Reifler's production to be incomplete because "subpoenaed third parties had produced hundreds of non-privileged email communications for which [Reifler] was either the author or a recipient."  (*Id.*)  NCMLI thus conferred with Reifler's counsel, (*id.* at 1–2 (emphasis omitted)), who responded that, "due to the fact that [Reifler] regularly deletes his email communications in the ordinary course of business, this supplemental production represents the complete production of responsive documents in [Reifler's] possession or control," (A.R. 120).  On December 19, 2017, the Bankruptcy Court held a conference to address this and other discovery disputes.  (*See* Ad. Dkt. 101 (transcript of conference).)[3]

On December 28, 2017, the Bankruptcy Court entered an order (the "ESI Order") directing Reifler, within five business days, to turn over or provide access to all "electronic devices capable of storing electronic data" that are "within [Reifler's] possession, custody, or control, or with respect to which [Reifler] has or can obtain access, for the purpose of full

---

[2] Citations to "A.R." are citations to the appendix filed in this Court by Appellee at Dkt. Nos. 11–13.

[3] Citations to "Ad. Dkt." are citations to the adversary proceeding, (No. 17-9016A), from which this appeal arises.

forensic examination and data collection." (ESI Order 2–3 (A.R. 121).) The ESI Order required

that Reifler provide these electronic devices to RVM Enterprises ("RVM"), a third-party forensic

examination company hired by NCMLI, for analysis. (*Id.*) The ESI Order also required Reifler,

within two business days, to provide NCMLI with a "full list" of the electronic devices "within

his possession, custody[,] or control," along with certain other information about those devices; a

"full list" of electronic devices no longer in Reifler's "possession, custody[,] or control," along

with certain other information about those devices; and a "full list of all email addresses and

accounts which [Reifler] has owned and/or utilized within the past five years, . . . as well as any

information (including passwords) needed to access" those accounts. (*Id.* at 2.)

On January 16, 2018, NCMLI moved to find Reifler in contempt for failing to comply

with the ESI Order. (Pl.'s Mot. for Order Finding Def. in Contempt ("Contempt Mot.") (A.R.

126–39).) NCMLI argued that Reifler had "failed to produce *any* [required information] within

the two-day deadline specified in the Court's ESI Order"; that after conferring with NCMLI,

Reifler untimely provided an "incomplete" list of electronic devices, namely, only some of his

personal devices and "not any devices used for business purposes"; that Reifler informed RVM

"that he possessed additional" electronic devices at his home but "stated that he will not provide

[RVM] access to" them; that Reifler "claims to lack control over any of his business-related

email accounts"; that RVM "is unable to access the two email accounts for which [Reifler]

provided [access] credentials"; and that, when an RVM employee arrived at Reifler's office to

image the electronic devices Reifler had identified, Reifler "demanded" that he leave and

"threatened to call building security," and thereby prevented RVM from completing its court-

ordered task. (Contempt Mot. 4–6.) Reifler filed an opposition to the motion on January 19,

2018. (A.R. 143.)

On January 23, 2018, the Bankruptcy Court held a conference at which it heard the

Parties' arguments on the contempt motion.  (Transcript Regarding Hearing Held on 1/23/2018

("Contempt Conf. Tr.") (Ad. Dkt. 118).)  On February 6, 2018, the Bankruptcy Court issued an

order finding Reifler in contempt and imposing sanctions.  (Order Finding Defendant in

Contempt and Imposing Sanctions ("Contempt Order") (A.R. 154).)  The Bankruptcy Court

found that Reifler was "in ongoing and willful violation of [the] ESI Order and acting in bad

faith"; that Reifler's "willful violations . . . were not due to factors beyond [his] control"; that

Reifler "was indisputably on notice of the possibility of sanctions being imposed for violation of

the ESI Order" after being served with NCMLI's motion for contempt; that Reifler was "directly

complicit in his contempt of the ESI Order"; and that NCMLI "will suffer substantial prejudice

absent [Reifler's] compliance with the ESI Order."  (Contempt Order 2–3.)  The Bankruptcy

Court ordered Reifler to immediately and fully comply with the ESI Order and, "for the

avoidance of doubt," directed Reifler to provide NCMLI with "a supplemental list identifying

each and every Electronic Device that [he] possesses, has custody over, or controls, or that [he]

reasonably has access to or could obtain access to, whether for personal or business use," and to

"clarify and supplement his earlier inadequate responses."  (*Id.* at 3.)  The Bankruptcy Court

further ordered Reifler to provide NCMLI with "a detailed, written explanation" as to what

electronic devices are no longer in his possession, custody, or control, and why he no longer had

or could obtain access to those devices.  (*Id.* at 4.)  It also ordered that Reifler, "shall pay, as a

sanction for his failure to comply with the ESI Order," both NCMLI's attorneys' fees and costs

incurred in bringing the motion for contempt, and RVM's fees and costs incurred in performing

its imaging and forensic analyses pursuant to the ESI Order.  (*Id.* at 5.)  Finally, the Bankruptcy

Court stated that any continuing violations of the ESI Order or the Contempt Order could result in the entry of a default judgment against Reifler. (*Id.* at 5–6.)[4]

On March 5, 2018, NCMLI filed a letter with the Bankruptcy Court alleging that Reifler had violated both the ESI and Contempt Orders. (Letter from Norman N. Kinel, Esq. to Bankruptcy Court (Mar. 5, 2018) ("Sanctions Letter") (A.R. 166–208).) In particular, NCMLI alleged that RVM had determined that "active steps were taken within days after [entry of the] ESI Order to permanently delete and spoliate evidence"; that Reifler's supplemental lists of his electronic devices failed to identify any additional devices "not already contained on the original list that [had been] provided to [NCMLI]"; and that Reifler "failed to disclose or provide access to" at least 42 electronic devices "for which he has or had possession, custody, or control." (Sanctions Letter 1–4 (emphases omitted); *see also* Sanctions Letter Ex. E (listing additional ways in which Reifler allegedly violated the ESI and Contempt Orders).) NCMLI thus requested the imposition of additional sanctions. (Sanctions Letter 5–6.)

On March 6, 2018, the Bankruptcy Court held a conference to address NCMLI's allegations, (A.R. 219–25 (transcript of conference), at which it advised NCMLI to file a motion seeking additional sanctions and default judgment or dismissal, (A.R. 220–21). On April 4, 2018, NCMLI filed a motion seeking further sanctions and entry of a default judgment against Reifler "for his willful spoliation of evidence and his violation" of the ESI and Contempt Orders. (A.R. 226.) NCMLI presented its earlier argument and supplemented it with a declaration from an RVM forensic engineer, Gregory Cancilla ("Cancilla"), involved with the case. (*See* Decl. of Gregory Cancilla ("Cancilla Decl.") (A.R. 257).) Reifler filed papers in opposition, arguing

---

[4] Reifler filed an interlocutory appeal as to the Contempt Order, which was dismissed by this Court on June 28, 2018. *See In re Reifler*, No. 18-CV-2559, 2018 WL 3212464 (S.D.N.Y. June 28, 2018) (Seibel, J.).

principally that there was no direct evidence of willful spoliation or prejudice to NCMLI.  (A.R. 277.)  In response, NCMLI filed two additional declarations from Cancilla.  (A.R. 344, 348.)

On April 19, 2018, the Bankruptcy Court held an evidentiary hearing on NCMLI's motion for default judgment.  (*See* Transcript Regarding Hearing Held on 4/19/2018 ("Hr'g Tr.") (Ad. Dkt. 177).)  Reifler did not attend the hearing or admit evidence at it.  (Hr'g Tr. 12–13, 35–36, 107, 130.)  NCMLI offered evidence on contempt and spoliation, including Cancilla's three declarations, which the Bankruptcy Court admitted.  (*See id.* at 56–59.)  The Bankruptcy Court also heard live testimony from Cancilla.  (*See id.* at 62–122.)  The Bankruptcy Court found that Reifler attempted to destroy, and succeeded in destroying, evidence relevant to NCMLI's claims against him.  (*See id.* at 135–53.)[5]

On May 4, 2018, the Bankruptcy Court, acting pursuant to Federal Rules of Civil Procedure 37(b)(2)(a)(vi) and (e)(2)(C), filed an order imposing default judgment against Reifler on all counts, thus denying Reifler a discharge of any liability.  (*See* Order ("Default Judgment Order") 10–11 (A.R. 351).)  This appeal followed.  (A.R. 462.)

## II.  Discussion

### A.  Standard of Review

The Court has jurisdiction to review this appeal pursuant to 28 U.S.C. § 158(a)(1).  *See Dishi & Sons v. Bay Condos LLC*, 510 B.R. 696, 700 (S.D.N.Y. 2014).  A district court reviews a bankruptcy court's conclusions of law de novo, its discretionary decisions for abuse of discretion, and its findings of fact for clear error.  *See In re Bayshore Wire Prods. Corp.*, 209 F.3d 100, 103 (2d Cir. 2000).  "A bankruptcy court abuses its discretion when it bases its

---

[5] Separately, the Bankruptcy Court also noted that Reifler had failed to comply with its order on NCMLI's requests for admissions.  (Hr'g Tr. 23; *see also* A.R. 63 (relevant order).)

decision on an erroneous view of the law or clearly erroneous factual findings, or where it commits a clear error of judgment." *Taub v. Adams*, No. 10-CV-2600 and No. 10-CV-2611, 2010 WL 8961434, at *4 (E.D.N.Y. Aug. 31, 2010) (citing *In re Blaise*, 219 B.R. 946, 950 (2d Cir. 1998)). Under the clear error standard, "[t]here is a strong presumption in favor of a trial court's findings of fact if supported by substantial evidence," and a reviewing court will not upset a factual finding "unless [it is] left with the definite and firm conviction that a mistake has been made." *Travellers Int'l A.G. v. Trans World Airlines, Inc.*, 41 F.3d 1570, 1574 (2d Cir. 1994) (first alteration in original) (quotation marks omitted). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.* at 1574–75 (citation and quotation marks omitted); *see also UFCW Local One Pension Fund v. Enivel Props., LLC*, 791 F.3d 369, 372 (2d Cir. 2015) (same).

B. Analysis

Reifler challenges the validity of the Bankruptcy Court's February 6, 2018 Contempt Order and the May 4, 2018 Default Judgment Order on multiple grounds. (*See* Br. of Appellant ("Reifler Br.") 17–44 (Dkt. No. 21).)

1. Alleged Procedural Defects in Contempt Order

Reifler first argues that NCMLI's January 2018 motion for contempt, (A.R. 126–39), resulting in the Bankruptcy Court's issuance of the Contempt Order, (A.R. 154), was "neither timely served, nor served upon" Reifler, (Reifler Br. 17). In support, Reifler cites to Federal Rule of Bankruptcy Procedure 9006(d), which provides in relevant part that a motion for contempt "shall be served not later than seven days before the time specified for such hearing, unless a different period is fixed by these rules or by order of the court," and to Federal Rule of Bankruptcy Procedure 7004(b)(9), which provides that service may be made "by mailing a copy

of the summons and complaint to the debtor at the address shown in the petition." According to Reifler, NCMLI served the contempt motion on Reifler's counsel, rather than on Reifler himself, on January 17, 2018, "a mere five (5) days prior to the hearing date" of January 23, 2018. (Reifler Br. 18.) Therefore, Reifler argues, he "never received said service" and "was not provided adequate time to respond." (*Id.* at 19.)

This argument falls flat. "Deficiencies in the method of service are harmless error under Fed. R. Civ. P. 61 when the party asserting deficient service has actual knowledge of the action and no prejudice results from the deficiency." *St. John Rennalls v. County of Westchester*, 159 F.R.D. 418, 420 (S.D.N.Y. 1994). Here, Reifler clearly had actual knowledge of the contempt motion through his counsel, who filed a response in opposition to NCMLI's motion on January 19, 2018, (A.R. 143), two days after receiving notice of the motion and four days prior to the January 23, 2018 hearing. Further, Reifler did not argue in his opposition to the contempt motion that he was caused prejudice by the late filing, and indeed Reifler does not now explain how he was prejudiced. This case is, therefore, indistinguishable from *In re Kramer*, 492 B.R. 366 (Bankr. E.D.N.Y. 2013), in which the Court held that, even though the debtor was not properly served under Bankruptcy Rule 7004, there was no prejudice because the debtor "had notice of the Motion through his counsel, had the opportunity to have opposition papers filed timely on his behalf, and had his counsel appear in opposition to the Motion." *Id.* at 371.

Reifler additionally argues that NCMLI violated the Southern District's Local Bankruptcy Rule 7007-1 by failing to reach out to confer with Reifler prior to the January 23, 2018 conference on NCMLI's contempt motion, and by failing to first request the Bankruptcy Court hold an informal conference. (*See* Reifler Br. 19–20.)[6] In sum, Reifler says, "the initial

---

[6] Local Bankruptcy Rule 7007-1(a) provides in relevant part that "[n]o discovery-related

contempt finding should be reversed, which would in turn reverse the [Bankruptcy Court's later] finding that the contempt was not purged" and resulting entry of default judgment. (*Id.* at 20.)

These assertions are belied by the record. In its motion for contempt, NCMLI "attached correspondence that indicated some of those attempts" at conferring with Reifler prior to the filing of the motion, as required by Local Bankruptcy Rule 7007-1(a), "and referenced additional telephone conferences held in furtherance of those attempts." (Answer Br. of Appellee ("NCMLI Mem.") 37 (Dkt. No. 10) (citing A.R. 140).) And while it appears that NCMLI did not request an informal conference prior to filing its motion for contempt, as required by Local Bankruptcy Rule 7007-1(b), the Bankruptcy Court effectively treated the January 23, 2018 conference as an informal conference as to the contempt motion. Although the Parties discussed the issue of contempt at that conference, (*see* Contempt Conf. Tr. 48–56), the Bankruptcy Court did not make formal findings or rule on the contempt motion; rather, it ruled only on other issues between the Parties, including NCMLI's request for a protective order, (*see id.* at 56–59), Reifler's request for a protective order, (*see id.* at 59–60), NCMLI's motion to compel the production of certain evidence, (*see id.* at 60–61), and NCMLI's motion for default judgment, (*see id.* at 62–63). The Contempt Order itself was only entered on February 6, 2018, some two weeks after the January 23, 2018 conference. (*See* Contempt Order (A.R. 154).) Therefore, the Bankruptcy Court committed no procedural error.

---

motion . . . may be heard unless counsel for the moving party files with the Court, at or prior to the hearing, an affirmation certifying that such counsel has conferred with counsel for the opposing party in a good faith effort to resolve by agreement the issues raised by the motion without the intervention of the Court and that counsel have been unable to reach an agreement."

Local Bankruptcy Rule 7007-1(b) provides in relevant part that "[n]o discovery-related motion . . . shall be heard unless counsel for the moving party first requests an informal conference with the Court and either the request has been denied or the discovery dispute has not been resolved as a consequence of the conference."

Further, even assuming a violation of Local Bankruptcy Rule 7007-1(b), any error was harmless. Reifler did not raise the issue of an informal conference in his opposition to the motion, (*see* A.R. 143), or at the Bankruptcy Court's January 23, 2018 conference. Nor does Reifler now claim any resulting prejudice, as indeed he cannot, for the transcript reflects that Reifler's counsel was fully heard on the issue of contempt at the January 23, 2018 conference. (*See* Contempt Conf. Tr. 48–56.) Nor does Reifler identify any case reversing a decision of the Bankruptcy Court on the ground of a Rule 7007-1(b) violation. Finally, the evidence of Reifler's contempt was overwhelming. *See infra* Section II.B.2. Therefore, because any error was "not inconsistent with substantial justice" and did not "affect the parties' substantial rights," it "is not grounds for reversal." *In re Lehman Bros. Holdings Inc.*, No. 08-13555 and No. 17-CV-4203, 2018 WL 4735712, at *2 (S.D.N.Y. Sept. 30, 2018) (citation and quotation marks omitted).

### 2. Alleged Substantive Deficiencies in Contempt and Default Judgment Orders

#### a. Prima Facie Case of Contempt

Reifler next argues that NCMLI failed to present a prima facie case of contempt, that he was in fact in full compliance with the ESI Order, and that the Bankruptcy Court thus erred by issuing the Contempt Order. (Reifler Br. 20–21.) He contends that the ESI Order was not clear and unambiguous because the Parties reasonably adopted differing interpretations of its language: Reifler interpreted the ESI Order to require him to provide NCMLI a list of only those electronic devices within his possession, custody, or control, while NCMLI interpreted it "more expansively, to include . . . electronic devices used by other individuals who work in the shared office space with [Reifler]." (*Id.* at 22.) Reifler further maintains that the proof of his noncompliance with the ESI Order was not clear and convincing because he "provided all relevant information regarding," and "unfettered access" to, "the electronic devices in his

custody, possession, and control." (*Id.* at 22–23.) In Reifler's view, NCMLI incorrectly "suggest[ed] that, because [Reifler] works in an office, all electronic devices located in said office are in his possession, custody, and control." (*Id.* at 23.) Reifler also contends that NCMLI "failed to demonstrate any evidence of" those devices not disclosed by Reifler. (*Id.* at 24.) Finally, Reifler argues that he diligently complied with the ESI Order: "Within about a week of [its] entry," he "provided information about, and access to, all electronic devices within his possession, custody, and control." (*Id.* at 23–24; *see also id.* at 32 ("It is patently clear that . . . [Reifler] made a good faith effort to comply with the ESI Order.").)

Courts have an "inherent power to hold a party in civil contempt in order to enforce compliance with an order of the court or to compensate for losses or damages." *Powell v. Ward*, 643 F.2d 924, 931 (2d Cir. 1981) (citation and quotation marks omitted). "A party may be held in civil contempt for failure to comply with a court order if (1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." *In re Blair Ventures, LLC*, 581 B.R. 728, 732 (S.D.N.Y. 2017) (quoting *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 655 (2d Cir. 2004)).

"On appellate review, this Court may set aside a bankruptcy court's order holding a party in contempt only for abuse of discretion, but such review is more exacting than under the ordinary abuse-of-discretion standard because a [bankruptcy] court's contempt power is narrowly circumscribed." *In re Blair Ventures*, 581 B.R. at 732 (alteration in original) (citation and quotation marks omitted). As noted, "[a] bankruptcy court abuses its discretion when it bases its decision on an erroneous view of the law or clearly erroneous factual findings, or where it commits a clear error of judgment." *Taub*, 2010 WL 8961434, at *4.

Reifler fails to show that the Bankruptcy Court abused its discretion. The ESI Order was clear and unambiguous: It "ORDERED" that Reifler "shall produce and/or provide access for inspection and imaging, . . . any and all computers, laptops, hard drives, tablets, notebooks, netbooks, phones, smart devices, personal digital assistants, workstations, servers, and/or other electronic devices capable of storing electronic data . . . within [Reifler's] possession, custody, or control, *or with respect to which [Reifler] has or can obtain access*, for the purpose of full forensic examination and data collection." (ESI Order 2–3 (emphasis added).) This language makes no distinction between personal and business devices and clearly requires Reifler to turn over all devices to which he "can obtain access." Reifler's argument to the contrary rings hollow given that, as NCMLI points out, Reifler's counsel approved the language of the ESI Order before it was entered. (*See* Contempt Mot. 1 n.1.)

Further, the overwhelming evidence before the Bankruptcy Court showed that Reifler did not diligently attempt to carry out the clear requirements of the ESI Order and, indeed, that Reifler willfully failed to comply with the ESI Order. The evidence showed that Reifler did not comply with the ESI Order's two-day deadline to produce a complete list of his electronic devices; that Reifler thereafter submitted only an incomplete list of his electronic devices that did not include any business-related devices to which he had or could obtain access but which were not in his possession or control; that Reifler refused RVM access to certain personal electronic devices located at his home; that Reifler produced an incomplete list of his email accounts; that Reifler failed to provide accurate credentials as to some of the email accounts he did list; and, finally, that Reifler kicked an RVM representative out of his office, thereby preventing RVM from completing the court-ordered imaging of Reifler's electronic devices. (*See* Contempt Conf. Tr. 48–56; *see also* Contempt Mot. 4–7.)

Accordingly, the Bankruptcy Court acted well within its discretion when it concluded that "(a) [Reifler] is in ongoing and willful violation of this Court's ESI Order and acting in bad faith; (b) [Reifler's] willful violations of the ESI Order were not due to factors beyond [his] control; (c) following service of the Contempt Motion, [Reifler] was indisputably on notice of the possibility of sanctions being imposed for violation of the ESI Order; (d) [Reifler] is directly complicit in his contempt of the ESI Order; and (e) [NCMLI] will suffer substantial prejudice absent [Reifler's] compliance with the ESI Order."  (Contempt Order 2–3.)

### b.  Sanctions for Spoliation

Reifler also challenges the sanctions imposed for spoliation.  (Reifler Br. 24–32.)

### 1.  Applicable Law

 "Spoliation is the destruction or significant alteration of evidence, or failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Tchatat v. O'Hara*, 249 F. Supp. 3d 701, 706 (S.D.N.Y. 2017) (quoting *In re Terrorist Bombings of U.S. Embassies in E. Afr.*, 552 F.3d 93, 148 (2d Cir. 2008)).  "A party seeking sanctions for spoliation has the burden of establishing the elements of a spoliation claim." *Id.* (citation omitted).  "These elements are '(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the evidence was destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.'" *Id.* (alteration omitted) (quoting *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 162 (2d Cir. 2012)).  In other words, "for sanctions to be appropriate, it is a necessary, but insufficient, condition that the sought-after evidence *actually existed and was destroyed*." *Farella v. City of New York*, No. 05-CV-5711 and No. 05-CV-8264, 2007 WL 193867, at *2 (S.D.N.Y. Jan. 25, 2007).  The party

seeking sanctions need not produce direct evidence of spoliation; rather, "circumstantial evidence may be accorded equal weight with direct evidence and standing alone may be sufficient." *CAT3, LLC v. Black Lineage, Inc.*, 164 F. Supp. 3d 488, 500 (S.D.N.Y. 2016) (citations omitted).  If that party proves "negligent" spoliation, it "must adduce sufficient evidence from which a reasonable trier of fact could infer that the destroyed or unavailable evidence would have been of the nature alleged by that party." *Tchatat*, 249 F. Supp. 3d at 706 (citation and quotation marks omitted).  However, if that party proves "bad faith" — that is, intentional spoliation — "relevance may be presumed from the fact of the evidence's destruction." *Id.* (citation omitted); *see also Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 109 (2d Cir. 2002) ("Where a party destroys evidence in bad faith, that bad faith alone is sufficient circumstantial evidence from which a reasonable fact finder could conclude that the missing evidence was unfavorable to that party.").

"If the requisite showing is made, sanctions may be proper under Fed. R. Civ. P. 37(b) when a party spoliates evidence in violation of a court order." *Farella*, 2007 WL 193867, at *2; *see also West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999) ("A federal district court may impose sanctions under Fed. R. Civ. P. 37(b) when a party spoliates evidence in violation of a court order.").  "Determining the proper sanction to impose for spoliation is confined to the sound discretion of the trial judge and is assessed on a case-by-case basis." *Deanda v. Hicks*, 137 F. Supp. 3d 543, 554 (S.D.N.Y. 2015) (citation, quotation marks, and alterations omitted).  At all times, however, a sanction should "(1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore the prejudiced party to the same position [it] would have been in absent the wrongful destruction of evidence by the opposing party." *Tchatat*, 249 F. Supp. 3d at 707

(quoting *West*, 167 F.3d at 779). "[A] court should always impose the least harsh sanction that can provide an adequate remedy." *Id.* (citation and quotation marks omitted).

A default judgment is a "severe sanction[]," but "may be appropriate . . . when a court finds willfulness, bad faith, or any fault on the part of the noncompliant party." *Guggenheim Capital, LLC v. Birnbaum*, 722 F.3d 444, 451(2d Cir. 2013) (citation and quotation marks omitted). Courts considering imposition of a default judgment generally look to four factors: "(1) the willfulness of the non-compliant party; (2) the efficacy of lesser sanctions; (3) the duration of the noncompliance; and (4) whether the non-compliant party had been warned that noncompliance would be sanctioned." *Id.* (citation and quotation marks omitted).

## 2. Application

The Bankruptcy Court acted well within its discretion in sanctioning Reifler for spoliation. Not only did Reifler's counsel admit that Reifler "regularly deletes his email communications," (A.R. 120), but overwhelming evidence of spoliation was presented at the April 19, 2018 hearing. The evidence showed, first, on December 20, 2017 — one day after the discovery conference at which Reifler learned he would have to turn over his electronic devices — Reifler conducted various web searches on, and visited web sites detailing, how to erase emails, text messages, and computer files. (Hr'g Tr. 143–44; Cancilla Decl. ¶ 16.) Second, on December 26, 2017, Reifler sent text messages to his IT contractor stating, "I want to delete all emails from 2016 on back," and, "Server can be culprit of security breach." (Hr'g Tr. 144; Cancilla Decl. ¶ 17.) Third, on December 28, 2017, the same day as the entry of the ESI Order, Reifler began deleting emails and email folders with file names indicating their relevance to NCMLI's claims. (Hr'g Tr. 144–46; Cancilla Decl. ¶ 18.) Fourth, on January 2, 2018 — the deadline under the ESI Order for Reifler to turn over his electronic devices and email accounts

— Reifler deleted 236 files relating to NCMLI's claims against him by moving them to his computer's recycle bin. (Hr'g Tr. 146–49; Cancilla Decl. ¶ 19.) Fifth, on January 2, 2018, Reifler downloaded and installed a computer program called Eraser, which "allows the user to completely remove data from their computer hard drive by overwriting it several times with carefully selected patterns," and which "can be configured to remove information about itself, making it look like the program never existed on a computer, and making it impossible to determine what files may have been deleted." (Hr'g Tr. 149–50; Cancilla Decl. ¶ 20.a–.b.) Sixth, on January 2, 2018, Reifler opened Eraser and changed settings within the program. (Hr'g Tr. 149–50; Cancilla Decl. ¶ 20.c–.d.) Seventh, between 1:54 p.m. and 2:45 p.m. on January 2, 2018, "[n]o logs or records of deletion activity exist, which is consistent with the Eraser program having been used." (Hr'g Tr. 149–50; Cancilla Decl. ¶ 20.e.) Eighth, Reifler deleted Eraser from his computer on January 9, 2018, one day prior to turning the computer over to RVM for forensic analysis. (Hr'g Tr. 80; Cancilla Decl. ¶ 20.f.) And ninth, Reifler failed — after the issuance of both the ESI and Contempt Orders and multiple conferences — to identify and turn over numerous known electronic devices for forensic analysis, and indeed turned over one computer that inexplicably lacked a hard drive. (Hr'g Tr. 31–32, 141.)

Reifler argues that this evidence does not show that he succeeded in permanently destroying evidence. (Reifler Br. 27.) He contends that Cancilla's testimony was "equivocal[]" and "offer[ed] no opinion that any files [were] permanently destroyed," that Cancilla did not state that he was unable "to recover deleted information," and that moving files into the computer's recycle bin does not show that those files were permanently deleted, as "it is well known that additional steps are required to delete files stored in the recycle bin." (*Id.*) Further, Reifler argues, Cancilla did not show that Eraser was in fact "run and that files were deleted as a

result," because Cancilla did "not say whether the absence of deletion records is equally, if not more, consistent with the [E]raser program having *not* been run." (*Id.* at 28 (emphasis added).) In sum, in Reifler's view, NCMLI fails to "identify a single document that has been destroyed and is not recoverable on [Reifler's] computer, let alone from other sources." (*Id.* at 27.)

Reifler's argument is wholly unpersuasive. As an initial matter, Reifler admitted no evidence at the hearing, and indeed Reifler himself failed to attend it. (*See* Hr'g Tr. 12–13, 35–36, 107, 130.) Although Reifler now points to an academic article stating that Eraser, in apparent contrast to Cancilla's testimony, in fact "leave[s] behind artifacts to show the program existed as well as the times and dates it was run on the system," and that even after files are deleted, "[f]iles with original erased file names and metadata remained in their original location," (Reifler Br. 28–29 (quotation marks omitted); *see also* A.R. 279 (article)), the article is hearsay. The statements in the article were not offered or admitted into evidence, and therefore Reifler failed to establish the article as a "reliable authority" as required under the exception to hearsay in Federal Rule of Evidence 803(18). Further, Reifler failed to call an expert witness through which to admit the relevant statements in the article. *See Mugavero v. Arms Acres, Inc.*, No. 03-CV-5724, 2009 WL 1904548, at *6 (S.D.N.Y. July 1, 2009) (excluding treatise on ground that Rule 803(18) "contemplates the admission of statements in treatises only through the testimony of an expert witness").

Instead of admitting evidence, Reifler's counsel focused solely on cross-examining Cancilla. (*See* Hr'g Tr. 62–117.) Yet, nothing in Cancilla's testimony undermines the Bankruptcy Court's factual findings that Reifler attempted to destroy, and succeeded in destroying, emails and computer files relating to NCMLI's claims against him. (*Id.* at 151.) Indeed, contrary to Reifler's view, Cancilla was unequivocal that, both prior to and in direct

response to the ESI Order, Reifler took active steps to learn how to permanently delete electronic information. (Cancilla Decl. ¶ 15–17.) Reifler thereafter did in fact delete electronic information, including "at least 2,545 emails" related to NCMLI's claims. (*Id.* ¶ 18.g.) As Cancilla testified on cross-examination, when emails are deleted, the "structure in which [those emails] may have existed" is not recoverable, and often only parts of the emails themselves are recoverable. (Hr'g Tr. 87.) And on January 2, 2018, Reifler deleted some "236 files" from his computer, including files clearly related to NCMLI's claims, by moving them to the recycle bin. (Cancilla Decl. ¶ 19.) Even if some or all of those files were not irrevocably destroyed, spoliation includes the "failure to preserve property for another's use as evidence in pending . . . litigation." *Tchatat*, 249 F. Supp. 3d at 706. By deleting emails and moving files to the recycle bin, Reifler clearly "acted with the intent to deprive another party of the information's use in the litigation." *CAT3*, 164 F. Supp. 3d at 501 (quoting Fed. R. Civ. P. 37(e)(2)). Finally, Reifler failed to comply with the ESI and Contempt Orders and refused to identify and provide access to certain electronic devices — "a dilatory tactic," as the Bankruptcy Court explained, "that gave [Reifler] time to research the means and manners to conceal and destroy" information. (Hr'g Tr. 143.) In sum, Reifler offers no sound reason to disturb the Bankruptcy Court's factual findings, which were based both on the evidence presented at the hearing and on the judge's first-hand opportunity to evaluate witness credibility.[7]

---

[7] Reifler also argues that the Bankruptcy Court erred in admitting that portion of Cancilla's testimony addressing whether the Eraser program was used and that files were deleted as a result. (*See* Reifler Br. 42 (citing Cancilla Decl. ¶ 20.e).) In Reifler's view, Cancilla "was not an expert" on Eraser and used "no methodology . . . to make the determinations about Eraser," making him unqualified to testify as an expert about its use. (*Id*.) However, the Court need not resolve the issue. Even assuming that portion of Cancilla's testimony should not have been admitted, the error was clearly harmless. Reifler does not challenge the vast bulk of Cancilla's testimony, including his conversations with Reifler in which Reifler told him he would not turn over certain devices; RVM's attempt to image Reifler's electronic devices during

Reifler separately argues that NCMLI failed to show that it suffered prejudice by any harm caused by Reifler's conduct. (Reifler Br. 30.) In Reifler's view, the Bankruptcy Court "made no effort to draw any nexus between the supposedly missing items and [the] evidence required to prove [NCMLI's] case," particularly given that NCMLI took "days of deposition testimony," "marked well over 100 deposition exhibits," and "obtained more than 28,000 pages of documents from non-parties." (*Id.*) This argument, however, misunderstands the law. Where spoliation is intentional, as here, prejudice is presumed. *See Ottoson v. SMBC Leasing & Fin., Inc.*, 268 F. Supp. 3d 570, 581 (S.D.N.Y. July 13, 2017) ("[P]rejudice may be presumed when the spoliating party acted in bad faith or in a grossly negligent manner." (citation and quotation marks omitted)); *Sekisui Am. Corp. v. Hart*, 945 F. Supp. 2d 494, 508 (S.D.N.Y. 2013) ("When evidence is destroyed intentionally, such destruction is sufficient evidence from which to conclude that the missing evidence was unfavorable to that party." (citation omitted)); *Arista Records LLC v. Usenet.com, Inc.*, 608 F. Supp. 2d 409, 439 (S.D.N.Y. 2009) ("When evidence is destroyed in bad faith, that alone is sufficient to support an inference that the missing evidence would have been favorable to the party seeking sanctions, and thus relevant." (citation

---

which Reifler kicked an RVM employee out of the office; RVM's later successful examinations of some of Reifler's devices; the evidence that Reifler had conducted internet searches and visited web pages on deleting text messages, emails, and computer files; the evidence that Reifler messaged his IT contractor stating that he wanted "to delete all emails from 2016 on back"; and the evidence that certain emails and computer files were deleted. (Cancilla Decl. ¶¶ 5–19.) Nor does Reifler challenge Cancilla's other testimony relating to Eraser — that it was downloaded, installed, and opened on January 2, 2018, that certain settings were changed on that day, and that Eraser was deleted on January 9, 2018. (*Id.* ¶¶ 20.a–.d, 20.f; *see also* Hr'g Tr. 79–80; A.R. 349–50 (supplementary Cancilla declaration).) Thus, even excluding Cancilla's testimony suggesting that Eraser had been run and that files had been deleted as a result, (Cancilla Decl. ¶ 20.e), the Bankruptcy Court still had abundant evidence with which to conclude Reifler engaged in intentional spoliation of evidence. Accordingly, any error was "not inconsistent with substantial justice," did not "affect the parties' substantial rights," and is thus "not grounds for reversal." *Lehman Bros.*, 2018 WL 4735712, at *2 (citation and quotation marks omitted).

omitted)).[8]  It was therefore Reifler's burden, not NCMLI's, to introduce evidence on prejudice.  *See R.F.M.A.S., Inc. v. So*, 271 F.R.D. 13, 24–25 (S.D.N.Y. 2010) ("The noncompliant party bears the burden to demonstrate that the other part[y] did not suffer any prejudice from the spoliation." (citation omitted)).[9]  Reifler had every opportunity to introduce evidence that NCMLI did not suffer prejudice at the hearing, but, as noted, he did not.

Accordingly, the record makes abundantly clear that the Bankruptcy Court acted well within its discretion in concluding that Reifler destroyed evidence, that his conduct was sanctionable, and that default judgment was an appropriate sanction.  Reifler "had an obligation to preserve [the evidence] at the time it was destroyed" under the ESI and Contempt Orders; Reifler intentionally attempted to destroy, and in fact did destroy, evidence "with a culpable state of mind"; and the "destroyed evidence was relevant," or at least presumptively so, to NCMLI's "claim or defense such that a reasonable trier of fact could find that it would support that claim or defense."  *Tchatat*, 249 F. Supp. 3d at 706.  Therefore, as the Bankruptcy Court explained, Reifler "severely hampered [NCMLI's] ability to present [its] case."  (Hr'g Tr. 135.)  And Reifler engaged in his campaign of intentional spoliation while remaining in continuing violation of his obligation, under the ESI and Contempt Orders, to turn over all of his electronic devices.  Reifler's behavior was thus also "disrespectful to the court and present[ed] the need to deter similar misconduct in the future."  (*Id.*)

---

[8] The cases upon which Reifler relies — *IBM v. Naganayagam,* No. 15-CV-7991, 2017 WL 5633165 (S.D.N.Y. Nov. 21, 2017); *In re Delta/Airtran Baggage Fee Antitrust Litig.*, 770 F. Supp. 2d 1299 (N.D. Ga. 2011); *Marshall v. DentFirst, P.C.*, 313 F.R.D. 691 (N.D. Ga. 2016); and *Scalpi v. Amorim*, No. 14-CV-2126, 2018 WL 1606002 (S.D.N.Y. Mar. 29, 2018) — are all inapposite, as they involve allegations of negligent rather than intentional spoliation.

[9] Indeed, as NCMLI points out, requiring it to demonstrate that the information deleted by Reifler was not available from other sources would have been "impossible," as NCMLI did not know exactly what information Reifler deleted.  (NCMLI Mem. 46.)

Finally, the Bankruptcy Court explicitly considered whether a sanction less harsh than entry of default judgment was warranted. It found that Reifler's conduct was willful and "proactive"; that the non-compliance had lasted over the course of four months and in violation of two court orders; that Reifler had been explicitly warned of the possibility of sanctions, including entry of default judgment; and that a less severe sanction than default judgment was not likely to be effective, given that the Bankruptcy Court had already imposed the lesser sanctions of holding Reifler in contempt and ordering him to pay NCMLI and RVM's fees, to no avail. (*Id.* at 135–36, 151–53; *see also* Default Judgment Order 3–4, 9–10.) The Bankruptcy Court further found that entry of default judgment "is necessary to achieve the purpose of Rule 37 as a credible deterrent and to make abundantly clear that this Court's orders are mandates[,] not optional directives that [Reifler] is free to interpret and abide by at his leisure." (Hr'g Tr. 153–54.)

Accordingly, Reifler presents no basis on which to disturb the Bankruptcy Court's Default Judgment Order.[10]

## III. Conclusion

For the foregoing reasons, the May 4, 2018 Order of the Bankruptcy Court is affirmed. The Clerk of Court is respectfully directed to enter judgment for Appellee and close this case.

SO ORDERED.

Dated: January 3[ , 2019
       White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

[10] Separately, Reifler argues that the Bankruptcy Court "erred in entering a money judgment" in its Default Judgment Order. (Reifler Br. 33.) However, no such money judgment was entered. The Bankruptcy Court's default judgment against Reifler only denied Reifler a discharge of his liability to NCMLI and denied Reifler a discharge of any liability. (*See* Default Judgment Order 10–11.)